FILED

2013 Aug-30  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CARL EDWARD PURYEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:11-cv-02600-RBP-JEO |
| | ) | |
| OFFICER BRANDON SHANE MUNDY | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Carl Edward Puryear, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America by the defendant, Officer Brandon Shane Mundy, during an arrest on September 21, 2009.  The plaintiff seeks compensatory and punitive damages.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

## CASE HISTORY

On September 7, 2012, the court entered an Order for Special Report directing that copies of the complaint be forwarded to the defendant and requesting he file a special report addressing the plaintiff's factual allegations.  The parties were advised that the special report, if appropriate, might be considered as a motion for summary judgment filed pursuant to Rule

56 of the Federal Rules of Civil Procedure. On November 5, 2012, the defendant filed a special report accompanied by affidavits, a DVD recording of the plaintiff's arrest, certain medical records from the Lawrence County Medical Center, and a copy of the North Courtland Police Department Policy Manual. (Doc. #25). On January 7, 2013, the parties were notified that the court would construe the defendant's special report as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On January 28, 2013, the plaintiff filed a response (doc. #28) to the defendant's motion for summary judgment, and on March 5, 2013, the defendant submitted a reply (doc. #29) to the plaintiff's response. The plaintiff submitted further responses on April 12, 2013. (Doc.'s #36 and #37). This matter is now before the court on the defendant's special report (docs. #25 and #29) being construed as a motion for summary judgment, and the plaintiff's responses thereto. (Docs. #28, #36 and #37).

## SUMMARY JUDGMENT STANDARD

Because the special report of the defendant is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendant, is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.* In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against

the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## FACTUAL ALLEGATIONS

Applying the above standard to the facts before the court, the following facts are undisputed or, if disputed, are taken in a light most favorable to the plaintiff:

On the evening of September 21, 2009, at approximately 11:40 p.m., the defendant received a radio call that another officer, Russell Graham, needed assistance at Sibley's Chevron, located at the intersection of Lawrence County Road 150 and Alabama Highway 20. (Doc. #25-1). According to Officer Graham's dispatch, he was on the scene where two women were disorderly and appeared intoxicated, and had assaulted a mother and daughter inside the Chevron station. *Id*. at 2-3. The call indicated the women were traveling in a blue Chevrolet Silverado. The defendant arrived at the Sibley's Chevron within minutes and pulled in behind a blue Chevrolet Silverado, at which time he turned on the blue lights and activated the video recorder in his police cruiser.[1] *Id*. at 3.

Shortly thereafter, the plaintiff exited the driver's side door of the Silverado and began moving towards the entrance to the store, in his words to "purchase cigarettes." (Doc. #25-1, p. 3; Doc. #28, p. 17). The defendant testifies that he believed the plaintiff was attempting to "elude arrest" and ordered him to stop.[2] (Doc. #25-1, p. 3). After the plaintiff failed to

---

[1] The defendant submits a DVD copy of the video from that evening. He contends that the provisions of *Scott v. Harris*, 550 U.S. 372 (2007), are applicable because the video "blatantly contradicts" the plaintiff's testimony in some respects. In *Scott*, the Supreme Court confirmed that a party's version of facts should not be considered for purposes of summary judgment if that version is "blatantly contradicted" by the record. However, contrary to the defendant's assertion, and because of the limited view from the camera, the video in this instance does not *visually* capture the events made the basis of the plaintiff's claims. Although some audio of the events is discernable, it is not enough to invoke the provisions of *Scott*. In fact, as will be discussed herein, some of the audio is supportive of the plaintiff's version of the facts.

[2] On this point, the defendant's special report is puzzling. Although he contends the plaintiff was attempting to "elude arrest," there are no facts in the record which show *why* the plaintiff was subject to arrest at that time. Not only was there already an officer on the scene who apparently had not seen fit to arrest the plaintiff for any reason, it is unclear how the defendant could have known the plaintiff was subject to arrest when he (the defendant) had just arrived on the scene. Additionally, the defendant acknowledges in his affidavit that he was called to the store because of two *women* who appeared intoxicated and had assaulted a mother and daughter. Nothing points to the plaintiff as having any direct involvement with the alleged disturbance, and there are no facts before the court which adequately

acknowledge a second order to "come here or be tased,"[3] the defendant shot the plaintiff in the back with a taser weapon, which launches two barbs connected by a wire and delivers a five-second electric shock once it reaches its target.[4] *Id*. at 3-4.  The defendant contends the plaintiff resisted orders to "stay on the ground," making it necessary for him to deliver a second shock to the plaintiff by pulling the trigger of the taser.[5] *Id*. at 5.  The plaintiff was eventually handcuffed, at which point the defendant disconnected the wires from the taser, but left the barbs in the plaintiff's back so that they could be removed by medical personnel.[6] The plaintiff was then transported to the Lawrence County Jail for booking,[7] after which he was taken to the Lawrence County Medical Center for removal of the barbs.[8]

---

explain the defendant's reasons for using the taser.

[3] As discussed later herein, the defendant's commands occur in such rapid succession that a reasonable jury could find they were essentially one command.

[4] As long as the barbs remain attached to the suspect's skin, an officer may continue to deliver five-second shocks by pulling the trigger of the taser gun.  Alternatively, once the electrical connection has been broken between the taser and the barbs, the taser gun itself can be used to deliver a "drive stun" by placing the taser against the suspect's skin and depressing the trigger.  However, a "drive stun" only affects a small portion of the body, whereas the barbs affect the whole body. (Doc. #25-1, pp. 4-5).

[5] On this point, the plaintiff's version of the events differs widely from the defendant's.  The plaintiff states that the second shock was delivered while he was "down writhing from the first shock," and contends the defendant stood over him and pulled the trigger "until [he] was almost unconscious." (Doc. #28, p. 17).

[6] After the wires were removed, the taser could no longer be used to deliver a shock through the barbs in the plaintiff's back, but could still be used to deliver a "drive stun."

[7] The plaintiff was initially charged with Driving Under the Influence; Possession of Drug Paraphernalia; Illegal Possession of Prohibited Liquor; Refusal to Display Insurance; and Driving While Revoked.  The defendant offers no rebuttal to the plaintiff's allegation that all charges were eventually dismissed.

[8] On this point, the plaintiff asserts that the defendant "snatched" one of the barbs from his back during the booking process, resulting in a "very painful experience." (Doc. #28, p. 18).  He alleges that he was taken to the hospital only after he refused to let the defendant remove the second barb.  *Id*.  A notation in the medical records seems to corroborate the plaintiff's claim.  The "Emergency Department

Once at the hospital, the plaintiff initially refused to sign paperwork authorizing treatment.  At that point, he felt "another stun or shock from the taser weapon."  The defendant disputes this contention, and states that he did not use his taser at any time after the initial arrest.[9]  The taser barbs were eventually removed from the plaintiff's back and he was transported to the jail for holding until he could post bond.

## DISCUSSION

### False Arrest Claim

The Fourth Amendment affords an individual the right to be free from arrest unless probable cause justifies the arrest.  *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir. 1997).  It is also clear that "[a]n individual's right to be free from unlawful arrest and imprisonment implicates a liberty interest indisputably protected by the Constitution and federal laws, the violation of which may give rise to a cause of action under § 1983."  *Id*.  However, an arrest based upon probable cause is an absolute bar to a claim for false arrest.  *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).  "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that

Primary Nursing Assessment" form indicates "tazer barb to (L) back" and "other puncture wound to upper back scant bleeding." (Doc. #25-5, p. 10).

[9] The defendant states that because the wires had been removed from the taser by this point, he could not have delivered a shock by way of the barbs.  He also contends that any inference that a "drive stun" was utilized is belied by the fact that the medical record fails to indicate burn marks.  This argument is without merit.  The defendant would have the court arrive at the unreasonable conclusion that he could not have utilized the "drive stun" technique without hospital personnel noticing *and* documenting burn marks.  It seems clear that utilizing a taser on a prisoner simply because he refuses to sign paperwork is objectively unreasonable.  The differing versions of this event simply create a material fact to be decided at trial.

the suspect has committed or is committing an offense."   *Id.*[10]  The totality of the circumstances must show that the arrest was "objectively reasonable."   *United States v. Warren*, 459 Fed. Appx. 812, 815 (11th Cir. 2012); *citing United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003).

In this instance, the defendant states in extremely vague fashion that he thought the plaintiff was attempting to elude arrest.  However, as stated above, nothing in the defendant's affidavit or Graham's affidavit provides even a hint of the specific charges the defendant thought the plaintiff might have been facing at that point.  The defendant states that he was called to the Chevron station to assist with two unruly *women*, and it is evident that he had barely arrived on the scene by the time he was tasing the plaintiff.[11]  He sets forth no facts which show that he had "reasonably trustworthy information" indicating the plaintiff had committed or was about to commit a criminal act.  Defense counsel's argument that the defendant had probable cause to believe the plaintiff "had been or was about to drive under the influence of alcohol or narcotics" is unsupported by any facts in the record.[12]  Because

---

[10] At the summary judgment stage, this court must view the totality of the circumstances in a light most favorable to the plaintiff, the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

[11] Based upon the audio portion of the DVD submitted by the defendant, it appears he uses the taser gun on the plaintiff within approximately nineteen (19) seconds of start of the video. (Defendant's Exhibit 3).  Since the defendant testifies he turned on his video recorder shortly after arriving on the scene, it seems evident that in that brief amount of time he could not have reasonably believed the plaintiff had committed or was about to commit a crime or posed a danger to anyone.  In that regard, our courts have stated that an arresting officer "is required to conduct an reasonable investigation to establish probable cause." *Rankin v . Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998); *citing Tillman v. Coley*, 886 F.2d 317 (11th Cir. 1989).

[12] Counsel asserts in his "Special Report" "Grounds for Summary Judgment" that "[g]iven the information that the defendant received from Graham, he had probable cause to believe that the plaintiff had been or was about to drive under the influence of alcohol or narcotics."  (Doc. #25 at ¶ 28).

the plaintiff was leaving the vehicle, it is not reasonable to assume he was "about" to drive under the influence. Additionally, in the DVD video, an officer (presumably the defendant) is heard saying that he knew the plaintiff was not driving the vehicle, and that he saw another individual ("Carl") behind the wheel when he (the officer) pulled up. *See Defendant's Exhibit 3, Part I, at approximately 15 min and 45 seconds.* In any event, even if the plaintiff had been driving, the defendant presents no evidence to show that he was aware of circumstances which would have reasonably indicated the plaintiff's blood alcohol level exceeded the legal driving limit at the time. Therefore, any contention that the defendant believed the plaintiff may have been driving under the influence is simply not supported by plausible facts. Additionally, there are no facts which demonstrate any other "objectively reasonable" reason to arrest the plaintiff on that occasion. *Rankin*, 133 F.3d at 1435. Based upon the totality of the circumstances as presented in the record, it seems clear that a reasonable jury could find the defendant had neither actual nor arguable probable cause to arrest the plaintiff. The defendant's motion for summary judgement should therefore be denied with respect to the plaintiff's false arrest claim.

### Excessive Force claim

In determining whether excessive force was used by an arresting officer, a court must apply a Fourth Amendment analysis, concentrating on whether the challenged use of force was reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

---

However, the affidavit of Graham (doc. #25-2) does not contain the requisite facts to support this argument. Nor does the affidavit of the defendant. (Doc. #25-1).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The standard requires a court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397.[13] This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

With these parameters in mind, it seems clear that genuine issues of fact exist with respect to whether the defendant used excessive force on the night in question. Not only has the plaintiff submitted facts which bring into question whether or not he was reasonably subject to arrest, but he states that as he was going into the store to purchase cigarettes the defendant used a taser gun on him "with little exchange and no provocation." (Doc. #28, p. 17). These allegations are corroborated to some degree by the video submitted by the defendant. On the video, we hear someone shout "come here" then immediately shout "come here or be tased." (Defendant's Exhibit 3). These statements are made in such rapid succession that they are essentially one command. We then immediately hear a click, which is presumably the taser gun being fired. These events occur so quickly that it appears the

---

[13] "[A]n officer's good intentions [will not] make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 387.

plaintiff would have had little or no time to respond to the defendant's commands. Nothing in the video, or the defendant's affidavit, adequately demonstrates why the plaintiff was being detained or why the use of a taser was necessary to subdue him at that point. There is no indication that the plaintiff was disorderly, was presenting any threat to the officers or bystanders, or that he had engaged in activity which would subject him to lawful arrest.[14] Taken in a light most favorable to the plaintiff, the defendant's use of the taser weapon appears to have been disproportionate to any threat posed by the plaintiff, which renders its use unreasonable. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).[15]

Assuming for the sake of discussion that the initial use of the taser could be found to have been reasonable, the plaintiff testifies that the defendant delivered a second shock while he was "down writhing from the first shot." *Id.*[16] Furthermore, the plaintiff states that the defendant shocked him again at hospital in response to his refusal to sign paperwork. Viewing these events in a light most favorable to the plaintiff, the defendant's actions were not "reasonably proportionate" to the circumstances at hand. *Galvez v. Bruce*, 552 F.3d

---

[14] Other than the vague assertion that he *believed* the plaintiff was "eluding arrest," the defendant offers nothing in his special report to show that any of the factors set forth in *Graham* were applicable to the events that evening.

[15] The disproportionate nature of the defendant's use of the taser is also evidenced by the limitations placed on taser use by the North Courtland Police Department Policy Manual. (Doc. #25-6). The manual authorizes the use of a taser to restrain "violent" individuals "where alternative restraint tactics have been or are reasonably likely to fail." *Id.* at 17. The manual makes it clear that the use of a taser "[is] not intended to be used as a general substitute for other non-lethal force options." *Id.* at 16.

[16] On this point, the video seems to support the plaintiff's claim. Although the participants are out of the frame, the audio reveals what sounds like multiple screams of pain.

1238, 1243 (11th Cir. 2008).[17]  Therefore, based upon the totality of the circumstance as presented to the court by the parties, a reasonable jury could find that the plaintiff was not attempting to elude arrest, did not pose a serious threat to the officer or bystanders, and was not actively resisting arrest, and therefore that the defendant's actions in using the taser gun were objectively unreasonable.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that the defendant's special report be treated as a motion for summary judgment and, as such, that it be **DENIED**.  The magistrate judge further **RECOMMENDS** that this action be referred to the undersigned for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate

---

[17] The defendant's reliance on *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), is misplaced. In *Draper*, the officer faced a suspect who was "hostile," "belligerent," "uncooperative," and "used profanity," and who "repeatedly yelled" and "repeatedly refused to comply with commands."  It is clear that the fact situation in *Draper* is not even remotely analogous to that presented here, even when viewed in light of the defendant's own testimony.

judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

**DONE**, this the 30th day of August, 2013.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge